89 P.2d 615

**ALBUQUERQUE GAS & ELECTRIC CO. v. CURTIS.**

**No. 4463.**

Supreme Court of New Mexico.

April 27, 1939.

W. A. Keleher and Theo. E. Jones, both of Albuquerque, for plaintiff in error.

Joseph L. Dailey and Waldo H. Rogers, both of Albuquerque, for defendant in error.

BICKLEY, Chief Justice.

Defendant filed a plea in the district court presenting the contention that plaintiff is not the real party in interest. The plea was controverted by plaintiff and a hearing was had, which resulted in an order overruling the plea. Defendant manifested no intention to stand on the ruling and suffer final judgment to be entered against it. To correct that order defendant sued out a writ of error. Plaintiff presents his motion to dismiss the writ of error on the ground that the order denying the plea in abatement is an interlocutory order which does not "practically dispose of the merits of the action so that any further proceedings therein would be only to carry into effect such interlocutory * * order * *."

The material portion of Sec. 2 of Rule 5 of Supreme Court Rules is as follows: "Appeals shall also be allowed by the district court, and entertained by the Supreme Court, in all civil actions, from such interlocutory judgments, orders or decisions of the district courts, as practically dispose of the merits of the action, so that any further proceeding therein would be only to carry into effect such interlocutory judgment, order or decision."

Although the rule refers to "appeals", it is conceded that in a proper case "such interlocutory judgments, orders or decisions of the district court" may be reviewed by the Supreme Court on writ of error. It is also conceded that the remedy of writ of error as here employed does not enlarge the scope of review.

■ From a consideration of the rule, aided by the principles announced in Otto-Johnson Merc. Co. v. Garcia, 24 N.M. 356, 174 P. 422, and Cornett v. Fulfer, 26 N.M. 368, 189 P. 1108, and the cases there cited, we hold that the order and decision of the district court that the plaintiff is the real party in interest, and denying the plea in abatement, is an interlocutory order, but not such an one "as practically disposes of the merits of the action, etc." The order deprives plaintiff in error (defendant below) of no property right, works no immediate injury to its rights, it cannot damage it until a final judgment is rendered, and then only so far as the order affects said judgment. It does not finally determine or complete

the suit. Much is left further to be done by the court in the premises. The order does not prevent a final judgment being rendered in the cause. We further hold that upon a review of a final judgment in the cause, if error be assigned that the district court erred in overruling the plea in abatement, such interlocutory decision will be within the scope of a review of such final judgment.

The motion to dismiss the writ of error is accordingly sustained and it is so ordered.

We think it appropriate to add that our decision in Rosser v. Rosser, 42 N.M. 360, 78 P.2d 1110, is not a precedent to the contrary. Whether the situation in that case may be distinguished from the case at bar we need not now decide. It is sufficient to say that our jurisdiction was not challenged in that case, and if we lacked jurisdiction in that appeal we did not notice it.

■ It is also appropriate to say that the Chief Justice invited the consideration of counsel for the parties to the question as to whether, if we should decide the interlocutory decision in this case to be not reviewable under Sec. 2 of Rule 5, the plaintiff in error could invoke a review of the district court's decision by virtue of the provision of Art. VI, Sec. 3 of the Constitution of New Mexico, as follows: "The supreme court * * * shall have a superintending control over all inferior courts." The court takes this occasion to express appreciation of the thoughtful and able response to such in-quiry embodied in supplemental briefs filed in the cause. We quote from the brief of plaintiff in error:

"The cases construing similar constitutional and statutory provisions are collected in notes, 112 A.L.R. 1351, 20 L.R.A., N.S., 942, and 51 L.R.A. 33. It should be noted that these annotations are not cumulative but only collect the cases decided since the next preceding one.

"A study of the cases pertaining to superintending control and its nature and scope will show that the power is of ancient origin and goes back to early common law days and the early days of the King's Bench in England when that court controlled all inferior courts under it and the proceedings therein. This power was transferred to this country and lodged in the highest courts in colonial days. And at first it was merely a part of the appellate power and original jurisdiction of the highest court. Later it came to be regarded as separate and distinct from either the appellate power or the original jurisdiction of superior courts. The nature and extent of the power of superintending control is fairly summarized by the annotator in 51 L.R.A. at page 111, in these words:

"'As is so often stated in the decisions, the power of superintending control is an extraordinary power. It is hampered by no specific rules or means for its exercise. It is so general and comprehensive that its complete and full extent and use have practically hitherto not been fully

and completely known and exemplified. It is unlimited, being bounded only by the exigencies which call for its exercise. As new instances of these occur it will be found able to cope with them. And, if required, the tribunals having authority to exercise it will, by virtue of it, possess the power to invent, frame, and formulate new and additional means, writs, and processes whereby it may be exerted.'

"This view has been accepted as accurate since it was written in 1901.

"Re Louis A. M. Phelan, 1937, 225 Wis. 314, 274 N.W. 411 [415], 112 A.L.R. 1345. In this case a prior suit had been filed in the Federal Court in Illinois. A suit had been filed in the State court of Wisconsin involving the same issues. Application was made to the Supreme Court of Wisconsin for a writ invoking the power of superintending control to stay action pending final determination of the Illinois action. It was granted. The court said as to what constituted superintending control and when it would be exercised:

" 'It will not be exercised when the remedy by appeal or writ of error is substantially adequate. It will not be permitted to perform the office of an appeal. It will be used to prevent irreparable mischief, great, extraordinary, or exceptional hardship, and great burdens in the form of expenses. The court will exercise the power upon sufficient occasion, especially where the fundamental rights of a party or parties are ignored. The power will not be exercised to control the dis-cretion of another court. In our opinion the petitioner has made a sufficient showing to entitle him to bring an action in this court under its superintending power, for a writ of prohibition. Our reasons for so concluding are the same as those stated in the ensuing part of the opinion, in support of the granting of the writ."

"Hutchins v. City of Des Moines, 176 Iowa 189, 157 N.W. 881 [890].

"In this case the court said that the power of superintending control extended and could be exercised 'whenever the exigencies of the situation require its interposition.'

"See, also, State ex rel. Hustisford Light, Power & Mfg. Co. v. Grimm, 208 Wis. 366, 243 N.W. 763, and other cases cited at page 1356 of 112 A.L.R.

"This, then, is a very extraordinary and unusual power. It stands unhampered by forms or writs and may be exercised by the court endowed with the power whenever such court deems it necessary.

"We do not need to go beyond our own decisions to demonstrate that the power of superintending control is separate, independent and distinct from the appellate jurisdiction and also from the original jurisdiction. Such is the plain import of the decisions of this court in State ex rel. Harvey v. Medler, 19 N.M. 252, 142 P. 376; State v. Roy, 40 N.M. 397, 60 P.2d 646, 110 A.L.R. 1; Jackling v. State Tax Commission, 40 N.M. 241, 58 P.2d 1167.

"It would seem to be equally well established that the power of superintending control extends to non-jurisdictional as well as jurisdictional errors of an inferior court. It is not limited to cases where the inferior court is exceeding its jurisdiction.

"In the case of State ex rel., etc., v. Grimm, 208 Wis. 366, 243 N.W. 763 [765], the court said:

" 'Neither the power nor the exercise of it as a matter of policy is limited to keeping the lower court within its jurisdiction or compelling it to act. It has been exercised in cases where the ruling of the lower court was merely erroneous.'

"Natural Gas Products Co. v. Thurman, 205 Ky. 100, 265 S.W. 475 [477], the court said:

" '* * * an appropriate writ will issue, not only in cases where the court is about to proceed or is proceeding beyond its jurisdiction, but it will also issue when the court is proceeding or threatening to proceed within its jurisdiction but in such a manner as to produce great and irreparable injury * * *.'

"See, also, the cases cited in 112 A.L.R. 1359.

"This court is committed to the conclusion that the term 'inferior courts' in the New Mexico Constitution includes the District Courts of this state. State ex rel. Harvey v. Medler, 19 N.M. 252, 142 P. 376. The cases generally on the point are collected in 112 A.L.R. 1361.

"Next would follow the question of how the powers should be exercised, assuming a proper case is presented for its exercise. If the conclusion reached by the annotator in 51 L.R.A., quoted supra, is correct, it would seem that this is not a very serious question. As indicated in the annotation in 112 A.L.R. at page 1370, some courts employ the writ of certiorari, others mandamus and prohibition. The State of Montana has evolved a 'writ of supervisory control'. 112 A.L.R. 1372. But it is submitted that the form the remedy takes is not important. The substance of the power is the paramount consideration. If the power exists and if it should be exercised then it is the position of plaintiff in error here that this court can devise whatever form is necessary in any particular case.

"Then under what circumstances will the power be exercised by this court. Concededly it is not a matter of right but discretionary. 112 A.L.R. 1373. It will be permitted only where no right of appeal or review exists or where such remedy, if it exists, would not be adequate.

"It may be argued that if this court upholds the power of superintending control as herein contended for, then this court would be swamped with applications for its exercise. This same contention was advanced in the case of State ex rel. Harvey v. Medler, 19 N.M. 252, 142 P. 376. It was there pointed out that in view of the discretionary nature of the power no fears in that regard need be

entertained. It would seem that in view of the special circumstances under which the power is exercised in other states the cases where it is invoked will not be many.

"It may also be argued in this case that the power of superintending control requires legislation or a rule of court to vitalize it. This court is committed to the doctrine that while Article VI, Section 2, of the New Mexico Constitution confers appellate jurisdiction on this court from all final judgments and decisions of the District Courts of the State, still this section deals only with appellate jurisdiction as distinguished from the right of appeal and as the constitution is silent about the latter it must be given by the legislature or it does not exist. State v. Chacon, 19 N.M. 456, 145 P. 125; Ex Parte Carrillo, 22 N.M. 149, 158 P. 800; State v. Dallas, 22 N.M. 392, 163 P. 252; Jordan v. Jordan, 29 N.M. 95, 218 P. 1035; Los Alamos Ranch School v. State, 35 N.M. 122, 290 P. 1019. This rule should probably now be changed so that the right of appeal will arise from a rule of this court instead of by legislative action in view of the case of State v. Roy, 40 N.M. 397, 60 P.2d 646, 110 A.L.R. 1.

"But such a rule with respect to ordinary appeals flows from practical considerations. The right of appeal when given can be exercised at will and may be invoked whenever desired by a defeated party. Thus conceived it is but natural that the courts should find a method to control the volume of litigation reaching the review stage. No such considerations could possibly affect the power of superintending control because it is a discretionary power. It is more like the power of original jurisdiction which is also discretionary (State ex rel. Meyers Co. v. Raynolds, 22 N.M. 473, 164 P. 830; State ex rel. Lynch v. Dist. Court, 41 N.M. 658, 73 P.2d 333, 113 A.L.R. 746; State ex rel. Sandoval v. Taylor, 1939, 43 N.M. 170, 87 P.2d 681). As to the original jurisdiction exercised by this court, it has never been held, so far as counsel are advised, that a legislative act or a rule of court is necessary to give it force and effect.

"Furthermore, other courts have held that the legislature may not impair the power of superintending control given by the constitution. In re Brant's Estate, 269 Mich. 201, 256 N.W. 855; State ex rel. T. L. Smith Co. v. Superior Court of Dane County, 170 Wis. 385, 175 N.W. 927; Vail v. Dinning, 44 Mo. 210.

"The above is submitted with reference to the question propounded by Chief Justice Bickley:

" 'What power does this clause confer on the Supreme Court, if any?'

"The second question is:

" 'Is it limited in its exercise by employment of the extraordinary writs named in the same section?'

"This question may be answered by pointing out that the particular writ employed to carry out the power of superintending control is of little, if any consequence.

As heretofore indicated, some courts employ the very writs named in this section to carry out the power. Others have devised their own writs. It is the substance of the power, not the form, that is important.

"Another reason suggests itself. This court has already held that Sections 2 and 3 of Article VI, N. M. Constitution, deal with three distinct powers: appellate, original and superintending control. State ex rel. Harvey v. Medler, 19 N.M. 252, 142 P. 376; State v. Roy, 40 N.M. 397, 60 P.2d 646, 110 A.L.R. 1; Jackling v. State Tax Comm., 40 N.M. 241, 58 P.2d 1167. This being true, then the writs specified in the section indicate how the original jurisdiction of the court may be exercised. It left the manner of exercise of the power of superintending control to this court to be governed according to the exigencies of the situation.

"By far the most convincing argument is · that suggested by Chief Justice Bickley in his letter. If the power of superintending control can only be exercised by the issuance of the writs mentioned in Section 3, then why mention the power of superintending control?

"There is finally the question of whether or not this case presents a situation calling for the exercise of the power of superintending control."

Defendant in error takes the position that the case at bar does not present a situation calling for the exercise of any of this court's powers other than that of review arising from its appellate jurisdiction. He says that the plaintiff in error has not presented any facts within the purview of the constitutional provision under consideration which would justify the exercise by this court of the extraordinary power of superintending control over inferior courts asserted by plaintiff in error.

In State ex rel. Peel v. District Court, 1921, 59 Mont. 505, 197 P. 741, 743, the Supreme Court refused to issue a writ of supervisory control, saying: "The writ of supervisory control is in the nature of a summary appeal, and the last refuge whereby relief may be had. It will issue only when there is no other plain, speedy, or adequate remedy at law by appeal or other constitutional writ."

In Litteral v. Woods, 1928, 223 Ky. 582, 4 S.W.2d 395, 396, the Court of Appeals said: "We have by interpretation extended our authority to issue controlling writs to inferior courts * * * to cases not only where they are proceeding without jurisdiction, but also to cases where they are proceeding to exercise their jurisdiction erroneously, resulting in great and irreparable injury to the applicant, and without any remedy open to him by appeal or otherwise. * * * However, we have steadfastly adhered to the law * * * that without the element of 'great injustice,' 'great and irreparable injury,' 'irreparable injury,' or some such expression embodying the same idea, our orig-

inal jurisdiction would not be exercised where the inferior court was proceeding within its jurisdiction, although erroneously and without the right of appeal or other remedy. * * * The fact of erroneous exercise of jurisdiction alone, although no correcting remedy exists, will not of itself authorize the issuing of the writ. There must be added to that situation the further element of 'great and irreparable' injury, damage, or injustice."

The Supreme Court of Louisiana said in W. B. Thompson & Co. v. Gosserand, 1911, 128 La. 1029, 55 So. 663, that in the exercise of its power of control and general supervision over inferior courts, it would "issue its writs in its discretion, according to the exceptional features of each case submitted."

In State ex rel. Hubbert v. District Court, 1918, 54 Mont. 472, 171 P. 784, 785, as to the remedy by writ of supervisory control, the court said: "The remedy sought is an extraordinary one. The writ never issues as a matter of course. It is authorized by the Constitution, out of abundance of caution, to prevent a failure of justice by supplying a means for the correction of manifest error committted by the trial court within jurisdiction where there is no other adequate remedy and gross injustice is threatened."

To the same effect is State ex rel. Larsen v. District Court, 1927, 78 Mont. 435, 254 P. 414, 416, where the court said:

"The writ is one to be seldom used and may be employed only in exigent cases to' remedy manifest wrongs which cannot otherwise be righted."

In State ex rel. Spinazza v. District Court, 1929, 83 Mont. 511, 273 P. 638, 642, the court said: "It is the settled law of this jurisdiction that the writ of supervisory control will issue only when a ruling, order, or decision of an inferior court, within its jurisdiction, (1) is erroneous; (2) is arbitrary or tyrannical; (3) does gross injustice to the petitioner; (4) may result in irreparable injury to the petitioner; (5) and there is no plain, speedy, and adequate remedy other than by issuance of the writ."

We need go no further in the case at bar than to say that upon a careful consideration of the facts presented, applying the criteria set forth in the decisions of courts where this power exists and is exercised, we see no great hardship to plaintiff in error in awaiting a review of the final judgment if it shall then find itself aggrieved by any decisions of the district court. The defendant (plaintiff in error) may doubtless be protected in its costs. The inconvenience discernible is not enough to move our discretion to employ the extraordinary power invoked, assuming that it exists.

BRICE, ZINN, SADLER, and MABRY, JJ., concur.